UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.06-80343-CIV-MIDDLEBROOKS/JOHNSON

MILENA MARINO,
individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

HOME DEPOT U.S.A., Inc., d/b/a
The Home Depot, a foreign corporation,

    Defendant.
_____/

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

    This Cause comes before the Court on Plaintiff's Motion for Class Certification (DE 57), filed November 30, 2006. The Court has reviewed the record and is fully advised in the premises.

**I. Factual Background**

    Defendant Home Depot U.S.A., Inc., ("Home Depot") is a home improvement chain that among other services, sells and installs carpet. Plaintiff Milena Marino ("Marino") brought the instant action for breach of contract and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), alleging that Home Depot overcharged her for carpet and padding installation, removal, and hauling.

    Plaintiff alleges the following facts in the Amended Complaint ("Complaint"). When a

consumer inquires about purchasing carpet, Home Depot sends a representative or third-party contractor to the consumer's home to measure the area where the consumer wishes to purchase and install carpet. As part of this measuring process, Defendant's representative or contractor determines the area, in both square feet and square yards, over which Defendant will install carpet and padding. Plaintiff refers to this measurement as the "Actual Area." ("AA").

Plaintiff alleges that Defendant also determines a total area, in both square feet and square yards, which serves as the basis for a price quote provided to the consumer. Plaintiff refers to this as the "Quoted Measured Area." ("QMA"). The Complaint states that the Quoted Measured Area includes the Actual Area plus a mark-up of approximately 10 to 20%. This excess is known in the industry as "Overage," and Plaintiff accepts that it is necessary in order for a consumer to purchase an amount of carpet sufficient for proper installation, as carpet is sold in only three width dimensions.

Plaintiff does not dispute that Defendant has a right to charge Plaintiff for carpet and padding based upon the Quoted Measured Area. Plaintiff, however, alleges that Defendant also based its charges for carpet installation, removal of existing carpet, and the hauling away of existing carpet on the Quoted Measured Area rather than the Actual Area.

The Actual Area of Plaintiff's home is 52.58 square yards, equivalent to 473.24 square feet. The Quoted Measured Area was 61.33 square yards, equivalent to 552 square feet. Plaintiff alleges that Defendant charged her for installation, removal, and hauling away services based upon the 552 square feet measurement, even though the area where the work was actually performed was 473.24 feet. Plaintiff claims that she paid $65.35 for work that was not performed. Based upon this allegation, Plaintiff brings an action for breach of contract, claiming

that she paid for work not performed. Plaintiff also claims that this act of overcharging is a violation of the FDUTPA, alleging that it represents an unfair and deceptive trade practice.

### A. Defendant's Carpet Installation Sales

Home Depot has been in the carpet sales and installation business since the early 1990's and sells carpet in all fifty states. Between the years 2001 and 2006, the timeframe Plaintiff utilized for purposes of her class action motion, Defendant completed 3,363,530 carpet installations throughout the United States.

### B. Plaintiff's Claim of Home Depot's Standard Carpet Installation Practice

Plaintiff states in her class certification motion that Home Depot uses a standard practice for all of its carpet installations that is described below. Home Depot disputes the notion that there is a standard practice, claiming that all installations are unique. Plaintiff describes that framework as follows:

1) A consumer chooses to purchase carpet and installation, (2) the consumer provides Defendant some basic information, such as their name and address, (3) the consumer pays Defendant a fee of approximately $35 for Defendant to visit the consumer's home and measure the Actual Area over which the consumer wishes to install carpet, (4) Defendant arranges an appointment with the consumer for the measure, (5) Defendant then sends a "measure technician" or "measure company" to the consumer's home to measure, at which time Defendant creates a measure diagram that shows the Actual Area over which the consumer wishes for Defendant to place new carpet and remove old carpet, (6) The measure diagram is sent via fax or email to Defendant, and most typically to one of Defendant's call centers, (7) Defendant calculates, from the measure diagram, the QMA, (8) Defendant's call center contacts the

consumer, provides the price for the job, which is based on the QMA, and requires that the consumer pay 100% of the job in advance (9) the consumer typically makes payment via credit card over the phone and (10) Defendant sends an installer to the consumer's home to install the carpet.

### C. Home Depot's Description of a Carpet Installation Transaction

Home Depot states that contrary to Plaintiff's allegations, every carpet installation process is unique. It argues that Plaintiff's description of the process is overly simplistic, as every consumer has a different level of involvement with Home Depot based upon the consumer's own needs and wishes. Defendant points out that since it uses third-party contractors to measure a consumer's area to be carpeted, there is no uniform process or standard. For purposes of the legal analysis in this case, it is not necessary to determine whether Plaintiff or Defendant's version of the process is entirely accurate. The only key fact for this analysis is that there is no standard amount of overage, or difference between the QMA and actual area, for each consumer. For each consumer, any amount of overage is unique.

### D. Plaintiff's Transaction with Defendant

Plaintiff paid Defendant for an estimate for carpet measurement and installation in her home on February 3, 2006. Home Depot sent a contractor to Plaintiff's home, who determined the QMA to be 61.33 square yards. Ms. Marino then proceeded to a Home Depot store to pay for the carpet and installation, as opposed to receiving a phone call, where she received a contract detailing the charges. Plaintiff did not read the contract, but the area measurement that charges were based off of was the QMA and not the actual area of Plaintiff's home. Home Depot alleges that its standard policy is to inform customers that the QMA is the basis for the installation and

4

removal charges, rather than any other measurement. *See* Dickson Aff. ¶ 6. Plaintiff maintains that she was not told of the charge calculations but rather simply paid her invoice and left. Home Depot and its contractors then installed Plaintiff's carpet to her satisfaction.

### E. Legal Claim and Proposed Class Description

Plaintiff claims that this transaction represents a breach of contract on Home Depot's part, as well as a deceptive trade practice. She argues that she paid for "installation" of carpet that was not actually installed, as the charges were based on the QMA. If the actual area had been used, Plaintiff claims, she would have paid $65.35 less than she did. Plaintiff also alleges that Home Depot's failure to directly point out to her that the QMA was the basis for installation charges constitutes a deceptive trade practice.

Plaintiff seeks certification for a nationwide class on the breach of contract claim, alleging that Home Depot uses the QMA in every installation and systematically overcharges consumers as a result. She also seeks certification of a Florida subclass for the FDUTPA claim, arguing that Home Depot does not advise consumers of its charge calculations, which she claims is a deceptive trade practice.

## II. Legal Analysis

Fed. R. Civ. P. 23 governs the certification of any potential class action. A class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b). *See Rutstein v. Avis Rent-A-Car Sys.*, 211 F.3d 1228, 1233 (11th Cir. 2000). The initial burden of proof to establish the propriety of class certification rests with the advocate of the class. *See Id.* Additionally, the decision to certify is within the broad discretion of the district court. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1251

(11th Cir. 2004).

FRCP 23(a) states

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

To meet the Rule 23(b) requirement, Plaintiff relies on 23(b)(2) and 23(b)(3), which read as follows:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

I will not engage in an analysis of whether Plaintiff satisfies the requirements of Rule 23(a), because it is clear that Plaintiff cannot satisfy the class action requirements of 23(b)(2) or 23(b)(3).

Rule 23(b)(3) requires a finding that questions of law or fact common to the class members predominate over any questions affecting only individual members. In performing this analysis, a court must "take into account the claims, defenses, relevant facts, and applicable

6

substantive law." *Klay,* 382 F.3d at 1254.  Furthermore, "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein,* 211 F.3d at1234.

Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). *See Klay,* 382 F.3d at 1255, *citing Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003).

### A.  Breach of Contract Claim

The first problem inherent in the Plaintiff's proposed nationwide breach of contract class is the difference in applicable state law.  A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).  "In order to make the findings required to certify a class action under Rule 23(b)(3) . . . one must initially identify the substantive law issues which will control the outcome of the litigation." *Id., citing Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978).[1]

Here the Plaintiff seeks certification of a class that would involve a breach of contract claim for all fifty states.  "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Id.*  In this case the factual and legal issues are

---

[1] In *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted Fifth Circuit decisions issued prior to October 1, 1981 as binding precedent.

closely intertwined, so I will examine them as a unit.

Plaintiff claims that the law of contracts is virtually the same throughout the country, noting that the core elements of a claim (existence of a valid contract, breach, and damages) are consistent in all states. She also directs me to an Eleventh Circuit case excerpt that stated "A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Klay,* 382 F.3d at 1263.

I note that the Eleventh Circuit in *Klay* actually reversed the district court's certification of a nationwide breach of contract class, despite the above excerpt. Additionally, while a breach may be a breach anywhere, that is not the end of the legal test for breach of contract in Florida. Florida contract law requires that in a breach of contract action, the breach in question must be material. *See J.J. Gumberg Co. v. Janis Servs., Inc.,* 847 So.2d 1048, 1049 (Fla. 4th DCA 2003). Plaintiff argues that this difference is essentially no difference at all, alleging that every breach for a putative class member would have to be material because Defendant is charging for installation that it does not actually do. This argument, however, is overly simplistic.

First, it makes the assumption that in every carpet installation, for every putative class member, any breach would automatically be material. However, this is not a case where for every class member, the difference between the QMA and actual area is the same. There is no allegation, for example, that Home Depot always makes the QMA measurement 10 square feet more than the actual area. For every class member, the difference between the QMA and actual area would be different. Therefore, a jury would have to make individualized findings as to whether the measured difference for every class member was a *material* breach of the contract. "Materiality is a question of fact to be determined by the trier of fact." *Haiman v. Fed. Ins. Co.,*

798 So. 2d 811 (Fla. 4th DCA 2001). A trier of fact could easily find that one difference between a class member's QMA and actual area was material, while another's was not. For example, a reasonable jury could easily find that 1 square foot of overage did not equate to a material breach, while a 10 square foot overage did. This fact makes a class action impractical and burdensome.

Certifying this class would lead to a situation where the trier of fact had to make individualized determinations as to materiality for every class member. This fact alone makes it clear that common issues of fact do not predominate, and that trying to proceed with a nationwide breach of contract class action would not be a remotely efficient adjudication of the controversy.

In addition to the trier of fact having to make individualized determinations as to the existence of a material breach, various differences in state law also serve to make the proposed class unmanageable. As the Klay Court noted, I must look not only at the elements of Plaintiff's legal claim, but also the defenses and all relevant differences in the substantive law regarding Plaintiff's breach of contract claim. It is clear that Florida contract law cannot apply to every potential class member on a nationwide basis. First, potential class members who entered into contracts with Home Depot in other states have no connection at all to Florida. Their contracts were negotiated and entered into entirely in different states, each with its own law of contracts.

A court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a common question of law." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (U.S. 1985). Applying Florida contract law to a contract negotiated in California, for example, would be the exact situation the Supreme Court sought to avoid.

Second, as noted above, contract law is not the same in Florida as in every other state, due to the material breach requirement.[2] Various other states require only a breach, so a putative class member would be prejudiced by applying Florida law to her claim, as she would have to prove more than that required under the law of her own state.[3]

Additionally, the fifty states have different statutes of limitations for breach of contract actions, several of which are less than Florida's five-year limit.[4] Plaintiff in this case seeks to certify a class encompassing a five-year period, from April 7, 2001 to April 7, 2006, thereby encompassing the maximum amount of time allowable under Florida law. However, utilizing a five-year statute of limitations for a nationwide class would encompass claims that would otherwise be time-barred in multiple states. This result would be extremely prejudicial to the Defendant, and the Supreme Court does not condone this type of scenario.

> ...local law created the right which the federal court was asked to enforce. In both cases local law undertook to determine the life of the cause of action. We cannot give it longer life in the federal court than it would have had in the state court without adding something to the cause of action. We may not do that consistently with Erie R. Co. v. Tompkins.

*Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533-534 (U.S. 1949).

Applying Florida's statute of limitations to all putative class members would allow claims

---

[2] Maine and Wisconsin also require "material breach" as opposed to "breach" in breach of contract actions. *See Maine Energy Recovery Co. v. United Steel Structures,* 724 A.2d 1248 (Me. 1999); *Riegleman v. Krieg,* 271 Wis.2d 798 (Wis. App. 2004).

[3] California, for example, requires only "breach." *See Reichert v. Gen. Ins. Co. Of America,* 68 Cal.2d 822 (Cal. 1968).

[4] *See e.g.* Alaska (3 years) Alaska Stat. § 9.10.053, California (4 years) Cal. Civ. Proc. Code § 312, Colorado (3 years) Colo. Rev. Stat. §13-80-102, Delaware (3 years) Del. Code Ann. 10 § 8101. Florida's five-year limitations period is codified in Fla. Stat. §95.11.

otherwise time-barred to be heard in federal court, a result that *Ragan* prohibits.  Therefore, Plaintiff's proposed class is overly broad, and I find that Florida law cannot be applied to Plaintiff's proposed nationwide class.

The Plaintiff argues that if Florida law should not apply to the class overall, it would be possible to break the proposed class down into a small number of subsets, where identical legal issues would predominate.  I disagree.  Contract law in the fifty states is nuanced and varies in more than just the elements of a claim.  The defenses available to a party differ, as does the question of whether a state's Uniform Commercial Code applies to a mixed contract for goods and services.  I find an analysis from the Seventh Circuit regarding the possibility of a nationwide negligence class to be persuasive and analogous to this case.

> The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may as the plaintiffs have argued forcefully to us differ among the states only in nuance, though we think not, for a reason discussed later. But nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts.

*In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

This reasoning clearly applies to the present case.  Certifying a nationwide breach of contract class, where the laws of each state apply, would force the court to examine the nuances of each state's law.  In breach of contract cases, states vary not only in their statutes of limitations, but also in their treatment of the admissibility of parol evidence and the types of damages available.[5]  Here parol evidence could be a major issue, as Defendant claims that its

---

[5] *See e.g. Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2003 U.S. Dist. LEXIS 25550 (S.D. Fla. 2003) for a discussion of the differences in the admissibility of parol evidence under Florida, Texas and Louisiana law.

policy is to always explain to consumers that their installation price quote is based on the QMA rather than actual area, and that the term "installation" in the contract includes more than the physical placement of carpet in a consumer's home. These are just two examples indicating how a court would have to apply the individual elements of a state's contract law, and they reveal that it is not possible to subdivide the Plaintiff's proposed class into manageable groups. The need to apply the nuances of the contract law of fifty states to Plaintiff's proposed class leads to the conclusion that common issues of law or fact do not predominate.

Additionally, Plaintiff's proposed breach of contract class does not satisfy the requirements of Rule 23(b)(2). Indeed, Plaintiff does not offer much legal support for her proposed 23(b)(2) class, devoting only 1/3 of one page out of a 30 page motion to this issue.

Here the Plaintiff seeks injunctive relief, but that relief is essentially seeking a declaration of liability against the Defendant. Courts have held that class certification is not appropriate in such a circumstance. "Certification is not appropriate where the declaratory relief sought is equivalent to a request for a declaration of liability." *Goldberg v. Winston & Morrone, P.C.*, 1997 WL 139526, at *3-4 (S.D.N.Y. Mar. 26, 1997).

This conclusion is supported by the fact that 23(b)(2) class actions were designed for civil rights cases, or situations where the class of plaintiffs had a cohesiveness that pre-existed the lawsuit.

> At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness ... The members of a (b)(2) class are generally bound together through 'pre-existing or continuing legal relationships' or by some significant common trait such as race or gender that transcends the specific set of facts giving rise to the litigation.

> Subdivision (b)(2) was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices ... Subdivision (b)(2) by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests.

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 n.8 and 1156 (11th Cir. 1983)(internal citations omitted).

This situation is not present in the case at bar. The proposed class members had no pre-existing cohesiveness, and the only thing bringing them together is that they all chose Home Depot for their carpet installations.

The fact that injunctive relief equates to a finding of liability against Defendant, along with the absence of any pre-existing cohesiveness among class members, causes Plaintiff's proposed 23(b)(2) breach of contract class to fail.

### B. FDUTPA Claim

Plaintiff herein also moves for certification of a Florida subclass, alleging a violation of FDUTPA. I find that there is no basis for certification of the proposed class, as again Plaintiff cannot satisfy Rule 23(b)(2) or (b)(3).

A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Rollins, Inc. v. Butland*, 2006 Fla. App. LEXIS 20861 (Fla. 2nd DCA 2006), *citing Chicken Unlimited, Inc. v. Bockover*, 374 So. 2d 96, 97 (Fla. 2d DCA 1979); *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998); *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997).

Plaintiff alleges that Defendant's deceptive act was the failure to inform her of how it calculated carpet installation costs. Home Depot, however, states that its standard policy is to

inform all customers of its pricing calculations at or before the point of purchase. *See* Dickson Aff. ¶ 11; Schwartz Aff. ¶ 16.

Here the Plaintiff is employing a theory of deception through omission, but she cannot point to any circumstance that would prove that for every putative class member, the same omission occurred. In order to determine whether a particular conversation did or did not occur, the fact finder would have to look at the individual circumstances of each class member. Each class member would have to state whether or not a Home Depot employee informed him of the pricing calculation, and then the Defendant would have to refute that with its own employee's statement. This process would result in numerous "mini-trials" on the issue of whether the first element of a FDUTPA claim had occurred.

The result of this process would be an exercise in inefficiency, and the need for individualized determinations as to the existence of a deceptive act leads to the conclusion that common facts do not predominate as to Plaintiff's FDUTPA claim. Each class member's FDUTPA claim would stand or fall based upon whether Home Depot failed to inform them of the basis for the pricing calculation. Without this omission, a class member could not satisfy the first element of a successful FDUTPA claim. It is clear that the proposed FDUTPA class does not meet the requirements of Rule 23(b)(3).

Furthermore, a class action is not the superior or only mechanism for resolving the issues involved in this claim. Individual plaintiffs who were not told of the pricing calculations and injured as a result could bring their own suits, as FDUTPA provides attorney's fees to a prevailing plaintiff. *See* Fla. Stat. § 501.2105(1). Therefore, even in cases where the damages are small, the cost of bringing a suit would not deter potential FDUTPA plaintiffs.

Plaintiff's proposed FDUPTA class fails the Rule 23(b)(2) test for the same reason as her proposed breach of contract class. I will not repeat the same discussion here. Suffice to say that the same facts exist for the FDUTPA class and the breach of contract class. A declaration of liability is at the forefront of the requested relief, and the FDUTPA class members do not share any pre-existing cohesiveness.

### III. Conclusion

Both of Plaintiff's proposed classes, the nationwide breach of contract class and FDUTPA subclass, fail the requirements of Rule 23(b)(2) and (b)(3). Common issues of law or fact do not predominate, especially in the context of having to apply the law of all fifty states to the proposed class. Certification would lead to an inefficient and overly burdensome adjudication of the controversy, and a class action is not the superior method for this case.

Nor is certification appropriate under 23(b)(2), as the primary relief Plaintiff seeks is a declaration of liability against the Defendant, and there is no pre-existing identity or cohesion among the proposed class members.

Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification (DE 57) is DENIED.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 23rd day of January 2007.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record